FILED

2022 Mar-31  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| LINDA FAYE JEMISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:20-cv-01914-SGC |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Linda Faye Jemison, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Jemison timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded.

## I.    Procedural History

Jemison has a high school education and prior work experience as a fast food worker, short order cook, bakery worker, food preparer, and dish washer. (Tr. at 30-

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

1

31, 235).  In her applications for DIB and SSI, filed on January 8, 2019, Jemison alleged she became disabled on November 30, 2018, due to a variety of physical impairments.  (*Id.* at 20, 82-83, 85, 207, 213, 234).  After her claims were denied, Jemison requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 20, 151-52).  The ALJ held a hearing on January 8, 2020, and denied Jemison's claims on April 27, 2020.  (*Id.* at 20-32, 39-61).  Jemison was 50 years old when the ALJ issued the decision.  (*Id.* at 30, 32).  After the Appeals Council denied review of the ALJ's decision (*id.* at 1-4), that decision became the final decision of the Commissioner, *see Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Thereafter, Jemison commenced this action.  (Doc. 1).

## II.     Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  An applicant for DIB must demonstrate disability between her alleged initial onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v.*

2

*Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).   An applicant for SSI must demonstrate disability between the date of her application for SSI and the date of the ALJ's decision. *Moore*, 405 F.3d at 1211.  The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b).  At the first step, the ALJ determined Jemison would meet the SSA's insured status requirements through December 31, 2021, and had not engaged in substantial gainful activity since November 30, 2018, the alleged onset date of her disability. (Tr. at 22).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant

3

is not disabled.  *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined that during the relevant period Jemison had the following severe impairments: asthma, hypertension, bipolar disorder, generalized anxiety disorder, human immunodeficiency virus, and SI joint degenerative joint disease.  (Tr. at 22).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  *Id.* at §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined that during the relevant period Jemison did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (Tr. at 23).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the

claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 416.920(a)(4)(iv) and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined that during the relevant period Jemison had the RFC to perform light work with certain postural, exertional, and non-exertional limitations. (Tr. at 28).[2] At the fourth step, the ALJ determined that during the relevant period Jemison was not able to perform her past relevant work as a fast food worker, short order cook, bakery worker, food preparer, or dish washer. (*Id.* at 30).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is not

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering Jemison's age, education, work experience, and RFC, the ALJ determined that during the relevant period there were jobs existing in significant numbers in the national economy, such as those of general office clerk, inspector/tester, and packager, that Jemison could perform. (Tr. at 31). Therefore, the ALJ concluded Jemison was not disabled during the relevant period. (*Id.* at 32).

## III.   Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   Discussion

On appeal, Jemison argues (1) the ALJ failed to state with adequate clarity her grounds for finding the opinions of June Nichols, Psy.D., unpersuasive; (2) the ALJ improperly discredited Dr. Nichols's opinions because her attorney referred her to Dr. Nichols for evaluation; (3) the ALJ's RFC determination is not supported by substantial evidence; and (4) the ALJ relied on an incomplete hypothetical question posed to the vocational expert at step five of the sequential analysis.  (Docs. 16, 21). The court addresses the first and second claims of error together.  Because the court concludes the ALJ's finding with respect to Dr. Nichols's opinions is not supported by substantial evidence, the court will not take up Jemison's additional arguments.

For DIB and SSI applications filed on or after March 27, 2017, new regulations for evaluating medical evidence apply.  Relevant here, the new regulations alter how the SSA evaluates medical opinions.  The old regulatory regime implemented a hierarchy of medical opinions and instructed an ALJ to assign an evidentiary weight to each medical opinion contained in the record by considering a laundry list of factors.  *See* 20 C.F.R. §§ 404.1527(c), 404.927(c).  The new regulatory regime disposes of the aforementioned hierarchy and instructs an ALJ to articulate the persuasiveness of a medical opinion or the source of multiple medical opinions by explaining the (1) the extent to which the source offers support for the opinion(s) and (2) the consistency of the opinion(s) with the record.  *See id.* at §§ 404.1520c(a), (b)(1) and (2), and (c)(1) and (2), 416.920c(a), (b)(1) and (2), and (c)(1) and (2).  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be."  *See id.* at §§ 404.1520c(c)(1), 426.920c(c)(1).  "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  *See id.* at §§ 404.1520c(c)(2). 416.920c(c)(2).  The ALJ may, but is not required to, explain her consideration of other factors, such as the relationship between a claimant and the source of a medical opinion.  *See id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

Dr. Nichols is a licensed psychologist. (Tr. at 664). The attorney representing Jemison in connection with her applications for DBI and SSI referred Jemison to Dr. Nichols for a psychological evaluation, performed on December 23, 2019. (*Id.*). Dr. Nichols reviewed summaries of medical and mental health records prepared by Jemison's attorney, took a history from Jemison, examined Jemison's mental status, and administered to Jemison the Similarities, Vocabulary, and Information Subtests of the Wechsler Adult Intelligence Test, Fourth Edition. (*Id.* at 664-666). Dr. Nichols offered multiple opinions at the conclusion of her psychological evaluation and in a Mental Health Source Statement completed on January 8, 2020. (*Id.* at 667-668). Broadly speaking, Dr. Nichols opined Jemison has disabling mental limitations. (*Id.* at 667-668). To give a few pertinent examples, Dr. Nichols opined Jemison (1) could not maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public; (2) could not maintain socially appropriate behavior or adhere to basic standard of neatness and cleanliness; and (3) could not sustain concentration and persist in a work-related activity at a reasonable pace. (*Id.* at 667-68).

The ALJ found Dr. Nichols's opinions were not persuasive. (*Id.* at 26). She asserted several explanations for her finding, including explanations regarding the supportability and consistency factors required by the new regulations, but those explanations are not supported by substantial evidence.

The ALJ asserted Dr. Nichols's opinions were not consistent with the fact that Jemison did not allege disability on the basis of a mental impairment. (*Id.*). Jemison may not have listed a mental impairment in her disability paperwork, but her attorney stated at the hearing that she intended to submit to the ALJ Dr. Nichols's psychological evaluation of Jemison, which she characterized as "probably pretty important," as soon as Dr. Nichols completed the evaluation. (*Id.* at 40). Jemison's attorney thereby made it clear to the ALJ that Jemsion was alleging disability on the basis of one or more mental impairments.

As another basis for finding Dr. Nichols's opinions unpersuasive, the ALJ asserted "Dr. Nichols [was] not an impartial, independent examiner, nor [was] she a treating source provider[,] [but rather] [was] a paid examiner employed by [Jemison's] representative to provide a favorable report to assist in [Jemison's] disability claim." (*Id.* at 26). As stated, the record reflects Jemison's attorney did refer her to Dr. Nichols. (*Id.* at 664). It also is true Dr. Nichols never treated Jemison. However, there is no evidentiary basis for the ALJ's assertion Dr. Nichols was paid "to provide a favorable report" for Jemison. This assertion implies Dr. Nichols abdicated her professional and ethical obligations. *See, e.g.,* Ala. Admin. Code 750-X-6, Appendix II, § 9.01 (requiring that "[p]sychologists base the opinions contained in their recommendations, reports, and diagnostic or evaluative statements, including forensic testimony, on information and techniques sufficient

10

to substantiate their findings"); *see also Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 987 (11th Cir. 2013) (holding ALJ improperly rejected psychologist's opinions where there was no evidence to support ALJ's suggestion claimant's attorney paid psychologist for a report in an effort to generate evidence and because "generating evidence is the purpose of obtaining opinions from medical sources, whether paid for by the Commissioner or by the claimant"); *Tavarez v. Comm'r. of Soc. Sec.*, 638 F. App'x 841, 847 (11th Cir. 2016) (holding "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report") (internal quotation marks omitted).

The ALJ asserted Dr. Nichols's opinions were inconsistent with the fact Jemison did not receive any mental health treatment before presenting to CED Mental Health Center in November 2019, the month before Dr. Nichols's evaluation. (*Id.* at 26). The factual premise of this assertion is inaccurate. *See Goulet v. Astrue*, 2008 WL 681049, at *3-7 (*supra*). The record reflects Jemison received mental health counseling at Health Services Center in Hobson City, Alabama, where she was seen for management of her HIV between January 23, 2018, and September 17, 2019. (*Id.* at 479, 482, 491, 493, 500).

The ALJ also asserted Dr. Nichols's opinions were inconsistent with Jemison's demonstrated ability to fill out her applications for DIB and SSI and

related forms, reported ability to concentrate to watch television and play games on her phone and to remember to take her medications daily, and history of work in unskilled and "low semi-skilled" food service jobs. (*Id.* at 26). Jemison's ability to complete her disability paperwork, watch television, play games on her phone, and remember to take her medications daily is not necessarily inconsistent with Dr. Nichol's opinions she has disabling mental limitations, including in the areas of attention and concentration. *See Lewis v. Callahan*, 1436, 1444 (11th Cir. 1997) (holding participation in everyday activities of short duration does not disqualify a claimant from disability). Jemison last worked in the food service industry in 2015, approximately three years before her alleged onset disability date and the date of her applications for DIB and SSI, and more than four years before the ALJ held a hearing and issued her decision denying Jemison's claims. This work history is not an adequate evidentiary basis on which to find medical opinions regarding Jemison's mental limitations unpersuasive.

The ALJ stated Dr. Nichols's opinion Jemison could not maintain socially appropriate behavior or adhere to basic standards of neatness and cleanliness was inconsistent with her finding Jemison presented as a neat and clean individual at the December 23, 2019 psychological evaluation. (*Id.*). Dr. Nichols asserted this opinion by checking a box to answer in the negative the compound question on the Mental Health Source Statement "Can Ms. Jemison maintain socially appropriate

behavior and adhere to basic standards of neatness and cleanliness?". (*Id.* at 668). Dr. Nichols's finding Jemison presented as a neat and clean individual on December 23, 2019, may be inconsistent with an opinion Jemison could not adhere to basic standards of neatness and cleanliness, but it is not necessarily inconsistent with an opinion Jemison could not maintain socially appropriate behavior. Whether a claimant could maintain socially appropriate behavior involves consideration of more than just whether she can groom and dress herself appropriately. *See Schink v. Comm'r of Soc. Sec.*, 935 F. 3d 1245, 1262-63 (11th Cir. 2019) ("[T]o discount a treating physician's opinion because it is inconsistent with the source's own medical records, an ALJ must identify a genuine inconsistency. It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing.") (internal quotation marks and citation omitted and alteration adopted).

The ALJ stated Dr. Nichols's opinion Jemison could not maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public was inconsistent with her finding Jemison's speech was clear and normal in rate and Jemison's eye contact was fair. (*Id.* at 26). The court accepts that the quality of a claimant's speech and eye contact may have some bearing on whether the claimant is capable of work-related social interactions, but the court

does not consider a claimant's normal speech and eye contact to constitute substantial evidence supporting the rejection of a medical opinion the claimant is not capable of such interactions.  *See Schink*, 935 F.3d at 1262-63 (quoted *supra* and holding "it [was] not inconsistent – or even that unlikely – that a patient with a highly disruptive mood disorder, in a structured one-on-one conversation with a mental-health professional, might be capable of being redirected from his tangential thought processes so as to remain on topic") (internal quotation marks omitted and alteration adopted).

The ALJ also asserted this opinion was inconsistent with Jemison's statements she can use public transportation and shop and resides with her boyfriend.  (*Id.* at 26).  This assertion relies in large part on a mischaracterization of statements Jemison made in her Function Report.  While Jemison selected a box on the report indicating that when she does leave the house she travels by public transportation, she further explained she "mainly" goes out only when she has a doctor's appointment.  (*Id.* at 262).  Similarly, Jemison selected a box on the report indicating that to the extent she does any shopping, she shops in stores, but she further explained she "mainly send[s] someone [to do the shopping] for [her]."  (*Id.*).  The ALJ's unfair characterization is troubling.  *See Goulet v. Astrue*, 2008 WL 681049, at *3-7 (M.D. Fla. Mar. 7, 2008) (reversing and remanding a case where the ALJ misquoted or misconstrued the record on numerous points).  Moreover, a claimant's

14

reported ability to use public transportation and shop infrequently is not necessarily inconsistent with a psychologist's opinion the claimant would not be able to maintain effective social interaction in a work setting. *See Schink*, 935 F.3d at 1264 (holding claimant's reported ability to participate in solitary activities, such as watching television, did not discount medical opinions claimant suffered significantly from mental impairments, particularly when he interacted with others). The court also does not see how a claimant's cohabitation with a significant other discredits a medical opinion the claimant is not capable of work-related social interactions. *See id.* at 1266 (holding the fact that the claimant was able to complete some tasks in a steady environment populated by familiar (or no) people said very little about his ability to function in a work setting).

Finally, the ALJ asserted this particular opinion was inconsistent with the absence of any report by Jemison that she had difficulty getting along with others. (*Id.* at 26). Jemison did, however, report difficulty getting along with her boyfriend's mother, with whom she and her boyfriend lived. (*Id.* at 479). Moreover, Jemison reported on multiple occasions that she had few or no friends and spent little or no time with other people, apart from her boyfriend and his mother. (*See, e.g., id.* at 53-54, 263, 666). In other words, per Jemison's reports, she had very few social contacts with whom to experience relational difficulty. *See Goulet*, 2008 WL 681049, at *3-7 (*supra*).

The ALJ did correctly note mental status examinations performed when Jemison presented to CED Mental Health Center in November 2019, December 2019, and March 2020 revealed some normal findings.  (Tr. at 26, 70, 78, 661). However, they also revealed abnormal findings – namely, visual hallucinations, one or more past attempts at self-harm, and a dysphoric mood – and even normal findings by themselves do not constitute substantial evidence supporting the finding Dr. Nichols's opinions are wholly unpersuasive.[3]

For all the foregoing reasons, the ALJ's finding Dr. Nichols's opinions are unpersuasive is not supported by substantial evidence.  The court emphasizes this memorandum opinion should not be interpreted to signal it believes Dr. Nichols's opinions are persuasive or that Jemison is entitled to benefits, but rather should be read as speaking only to an ALJ's obligation to provide adequate support for a determination regarding the persuasiveness of a medical opinion, at least with respect to the supportability and consistency factors.  The court notes Jemison's arguments regarding the ALJ's RFC determination and the hypothetical posed to the vocational expert focus on her alleged physical limitations.  Nonetheless, because the persuasiveness of Dr. Nichols's opinion, as determined on remand, may affect whether the ALJ's determination of Jemison's RFC is supported by substantial

---

[3] The court also notes the Eleventh Circuit has instructed that an ALJ should consider the episodic nature of bipolar disorder.  *See Schink*, 935 F3d at 1267; *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020).

evidence and whether the ALJ relied on an incomplete hypothetical question posed to the vocational expert at step five of the sequential analysis, the court reserves judgment on those arguments.

## V.    Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is not in accordance with applicable law or supported by substantial evidence.  Therefore, the decision is due to be reversed and remanded for further consideration.  A separate order will be entered.

**DONE** this 31st day of March, 2022.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE